IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 12, 2002 Session

## STATE OF TENNESSEE v. MARCUS M. ODEN

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-49577      Don R. Ash, Judge**

---

**No. M2001-01343-CCA-R3-CD - Filed April 24, 2002**

---

The Rutherford County Grand Jury indicted the defendant for aggravated child abuse. Pursuant to a negotiated plea agreement, the defendant pled guilty to aggravated assault as a Range II multiple offender for an eight-year sentence, with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court denied the defendant's request for alternative sentencing and ordered him confined in the Tennessee Department of Correction. In this appeal, the defendant contends he should have received alternative sentencing. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Gerald L. Melton, District Public Defender; and Jeffrey S. Henry, Assistant District Public Defender, for the appellant, Marcus M. Oden.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and J. Paul Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

At the guilty plea acceptance hearing, the prosecutor recited the following underlying facts:

> The facts in the case would have been that had
> this gone to trial . . . the seven-week-old child . . .
> suffered [from] apparently a broken arm, a broken

clavicle, and a fractured skull. However, this indictment only deals with the broken arm as the other two injuries occurred at a different time.

They did interview [the defendant] after the child was taken to the hospital. At first he did not admit any involvement in it but then later did give a statement to the police where [he] said that he became frustrated with the seven-week-old child's crying and did pull the left arm and did hear it snap.

## PRESENTENCE REPORT

The presentence report reveals the defendant was 21 years of age with a special education high school diploma and no prior criminal record. The defendant's work history since graduating only involved two terms of employment, each for less than a month. The defendant was the father of the victim; the victim's mother was an 18-year-old high school student. At the time of the injury on May 18, 2000, the defendant was keeping the child alone while the mother was at school. The seven-week-old victim weighed seven pounds. Medical reports indicated the victim had not only a broken arm, but also a broken clavicle. A CT scan further revealed that the victim had sustained a large skull fracture at some time prior to the current incident.

The Department of Children's Services (DCS) intervened upon being called to the emergency room at the hospital. The defendant denied any knowledge of how the injury occurred. Subsequently, the defendant confessed his involvement to a police officer. Defendant and the mother executed a plan of action with DCS which disallowed defendant's being alone with the victim until the defendant completed parenting classes. The defendant only attended three of the required eight parenting classes; thus, he failed to complete the program.

## SENTENCING HEARING TESTIMONY

Edna Oden, the defendant's mother, testified that the defendant failed to complete parenting classes because she was unable to transport him. She stated her employer assigned her mandatory overtime; the defendant was without a driver's license; and there was no method of public transportation available to their residence. She further stated she was the sole means of support for the unemployed defendant; the defendant was not a "mean person;" and she feared the defendant "wouldn't last in jail" because of his mental condition. She conceded the defendant initially told her he dropped the victim.

The defendant initially testified the incident occurred the first time he was left alone to care for the victim; however, he later conceded this testimony was incorrect. He further stated that when

the victim would not cease crying, he shook the victim; when that had no effect, he broke the victim's arm. The defendant stated he was not a bad person and was sorry for hurting the victim.

On cross-examination, the defendant conceded he had given several inconsistent and inaccurate statements as to the cause of the victim's injury. He acknowledged the victim also suffered from a fractured skull, which occurred prior to the instant offense, but he was unaware how this injury occurred. The defendant further conceded he knew it was wrong to break the victim's arm at the time of the offense; the victim cried after the incident; he realized he "had done something serious" to the victim; he did nothing to help the victim after inflicting the injury; and when the mother returned, she inquired what was wrong with the victim, to which he replied he "didn't know."

The defendant then read his prior statements into the record, and he explained that his answers were untruthful because he was "scared." The trial court *sua sponte*, inquired:

The Court: You told them the way the accident happened was that you were babysitting, the phone rang, you got up to reach for the phone, you fell over and landed on the baby to break his arm. Did you tell them that at the [g]uidance [c]enter?

The Witness: Yes, sir.

The Court: You did?

The Witness: Yes, sir.

The Court: Why – why would you tell them that?

The Witness: I don't know. I was just scared at the time.

The Court: I don't understand. Why would you tell them that?

The Witness: I was scared, and I just –

The Court: Well, I can under – understand being scared back in May when you [were] arrested; but this is about two or three months ago, when you're at the [g]uidance [c]enter. You told them a different story than the one you wrote out for the police.

Smyrna Police Officer Jeff Peach testified he was dispatched to the emergency room on May 18, 2000, where he interviewed the defendant. The defendant denied any knowledge of the injury, opining that "a kid in the neighborhood might have came over and hurt the child or something." When Officer Peach re-interviewed the defendant on May 25th, the defendant admitted that he

became frustrated and pulled on the victim's arm, breaking it, when victim would not cease crying.

The victim's mother testified the defendant is fond of the victim. When asked if the defendant was also responsible for the victim's fractured clavicle, fractured skull, and the resulting brain injury, she stated, "I can't say." However, when asked if she were responsible, she responded, "No, I didn't do it. I was at school at the time."

## TRIAL COURT FINDINGS

The trial court denied alternative sentencing, finding: the defendant had no prior record, had provided little financial support for his child, had not adequately sought rehabilitation, and had been unemployed even though he was able to work. The trial court further found that the circumstances of the offense were reprehensible; the defendant "told a different story to everybody that's walked in the door;" and there was a need for deterrence.

## SENTENCING

The defendant contends the trial court should have ordered split confinement or placement in the community corrections program. We believe the determination of the trial court is supported by the record.

### A. Standard of Review

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). Thus, a Range II offender is not presumed to be a favorable candidate.

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1).

Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); State v. Batey, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

## B. Analysis

As stated, the defendant as a Range II offender does not enjoy a presumption of alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6). The defendant correctly points out that he had no prior convictions. However, he was free to enter a plea agreement as a Range II multiple offender. *See* State v. Mahler, 735 S.W.2d 226, 228 (Tenn. 1987). Furthermore, by agreeing to plead guilty as a Range II multiple offender, the defendant waived his statutory presumption favoring alternative sentencing. *See* State v. Homer L. Evans, No. E2000-00069-CCA-R3-CD, 2001 WL 274069, at *3-4 (Tenn. Crim. App. Mar. 20, 2001, at Knoxville). The defendant bears the burden of establishing that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

The defendant contends the trial court failed to consider all applicable statutory factors in determining whether he should receive alternative sentencing. Specifically, the defendant contends the trial court failed to consider his potential for rehabilitation and social history. Additionally, he contends the trial court misapplied the evidence in concluding the circumstances of the offense and the need for deterrence favored denial of alternative sentencing.

### 1. Deterrence

The defendant argues the trial court improperly considered the need for deterrence in denying alternative sentencing. The trial court, in evaluating whether it should deny alternative sentencing, posed the issue of "whether or not there are [similar] incidents present in this community," to which the court concluded, "I think there are."[107] The defendant correctly argues that the trial court's statement is insufficient to deny alternative sentencing based on the need for deterrence. *See* State v. Hooper, 29 S.W.3d 1, 10-12 (Tenn. 2000). Accordingly, our review of the defendant's sentence will be *de novo* without a presumption of correctness. *See* Poole, 945 S.W.2d at 96.

## 2.  Potential for Rehabilitation

The defendant contends the trial court failed to consider his potential or lack of potential for rehabilitation.  However, the record clearly establishes the defendant failed to complete parenting classes while on pretrial release.  Furthermore, on direct examination, the defendant testified he had never been left with the victim alone prior to this incident, and on cross-examination, the defendant conceded he, alone, had watched the victim on several prior occasions, and his earlier testimony "wasn't true."  The trial court may consider failed past efforts of rehabilitation.  *See* Tenn. Code Ann. § 40-35-102(5).  Additionally, a defendant's lack of honesty at the sentencing hearing may be considered in determining whether rehabilitation is likely.  *See* State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App.1999).  It is apparent the trial court considered the defendant's lack of potential for rehabilitation.

## 3.  The Defendant's Social History

The defendant contends the trial court failed to consider his social history.  The trial court indeed considered defendant's "social record" and noted the positive influence of defendant's mother.  However, the record also established that the defendant had a very poor work history and remained unemployed for at least six months prior to the sentencing hearing.  A defendant's work history is relevant to his or her chances for rehabilitation.  State v. Kelley, 34 S.W.3d 471, 483 (Tenn. Crim App. 2000).  The evidence supports the trial court's conclusion that the defendant's social history disfavors imposition of alternative sentencing.

## 4.  Circumstances of the Offense

The defendant contends the trial court inaccurately concluded that the circumstances of the offense required the denial of alternative sentencing.  The trial court may look behind a plea agreement and consider the true nature of the offense committed.  *See* State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983); State v. Biggs, 769 S.W.2d 506, 507 (Tenn. Crim. App. 1988).  Where an offense is shocking or reprehensible, this is certainly a relevant consideration in determining whether alternative sentencing is appropriate.  *See* State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991) (holding alternative sentencing may be denied solely upon the circumstances of the offense where it is especially violent, horrifying, shocking or reprehensible and outweighs the favorable factors).

The undisputed testimony established the seven-pound, seven-week-old victim suffered from a fractured skull, which resulted in brain injury, and a broken clavicle, in addition to the broken arm. The victim's mother denied involvement in any of the injuries, and there was no evidence to the contrary.  The trial court found defendant's offense was reprehensible and "obscene."  The evidence supports this finding.

The facts of this case clearly support commission of the Class A felony of aggravated child abuse, an offense that would make the defendant ineligible for probation, *see* Tenn. Code Ann. §

40-35-303(a), and ineligible for community corrections, *see* Tenn. Code Ann. § 40-36-106. The defendant was allowed to plead guilty to the Class C felony of aggravated assault, which made him eligible for alternative sentencing consideration. The trial court had the opportunity to observe the credibility and demeanor of the defendant and obviously was unimpressed. The defendant had failed to complete parenting class, which was an opportunity for rehabilitation. Defendant had a poor work history. Although the defendant had no prior criminal record, the trial court justifiably concluded the defendant was unlikely to successfully complete any local rehabilitative programs.

Under these circumstances, we are unable to conclude that the trial court erred in denying alternative sentencing. We affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE